**Dated: May 19, 2006**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **HAROLD RAY CASH, JR.** | ) | Case No. 04-72366 |
| | ) | Chapter 7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| **BETTY CASH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 04-7130 |
| | ) | |
| **HAROLD RAY CASH, JR.** | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

On the 13th day of March, 2006, the above-referenced adversary proceeding came on for trial.

Appearances were entered by Steven W. Soulé and John Richer, Attorneys for Defendant, and Ron

Wright, Attorney for Plaintiff. After reviewing the testimony and evidence, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

The parties submitted an Agreed Pre-Trial Order which was signed on March 9, 2006, and contains the following stipulated facts which are adopted by the Court as part of its findings of fact:

1. The Debtor filed the above-referenced bankruptcy case as a voluntary proceeding under Chapter 7 of the United States Bankruptcy Code on June 23, 2004 (the "Petition Date"). Trustee Gerald Miller was subsequently appointed to administer the assets of the Debtor's bankruptcy estate.

2. Prior to the Petition Date, the Debtor was the president and owner of Broken Arrow Plumbing & Heating ("BAPH"). BAPH was a corporation organized and existing under Oklahoma law. BAPH primarily specialized in providing commercial plumbing services in the Tulsa and Broken Arrow metropolitan area. BAPH has been in business since 1973.

3. C-It-All is an Oklahoma corporation that is owned solely by the Debtor's wife, Michelle Cash, whom the Debtor married in March, 1998. C-It-All began business in 1998. Between 1998 and 2002, C-It-All specialized in locating water and drainage leaks using electronic equipment. The Debtor has never owned an interest in C-It-All.

4. Beginning in April, 2002 and concluding in April, 2004, BAPH sold certain of its assets to C-It-All and other third parties including Tulsa Midwest Construction,

Case 04-07130   Doc 83   Filed 05/19/06   Entered 05/19/06 09:31:14   Desc Main
Document      Page 2 of 11

Security First Corporation and Payne's Refuse, Inc.

5. In April, 2003, BAPH and C-It-All entered into an Asset Purchase Agreement wherein BAPH sold C-It-All its phone number and customer list for $20,000.00. Separate counsel represented both C-It-All and BAPH in this transaction.

6. The Debtor was previously married to Betty Cash.

7. Betty Cash and the Debtor were divorced pursuant to a Decree of Divorce entered by the Wagoner County District Court on or about October 31, 1997, after a four (4) day trial (the "Decree"). Separate lawyers represented Betty Cash and the Debtor during their divorce.

8. The Decree awarded Betty Cash, inter alia, property division alimony as follows:

> As and for payment which is a payment pertaining to a division of property the Betty Cash shall receive and the Defendant shall pay unto the Betty Cash the sum of $275,000.00 with interest thereon, from this date at a rate of 9.15% per anum. Such payments shall be made by the Defendant unto the Betty Cash in the sum of $3,505.95 per month commencing the 1st day of October, 1997 and continuing on the 1st day of each month thereafter until all principle and interest be paid in full. All payments provided for hereunder are irrevocable and shall not be subject to subsequent modification.

9. During their divorce, Betty Cash claimed a marital property interest in BAPH and sought compensation through the divorce for her interest in BAPH. Betty Cash and the Debtor contested the value of BAPH for purposes of the amount of Property Division that the Debtor would be required to pay Betty Cash.

10. During their contested divorce proceeding, Betty Cash, in addition to the Property Division, sought a separate award of support alimony for her continued support

3

after the divorce (hereinafter, the "Support Alimony"). The Debtor contested Betty Cash's request for Support Alimony.

11. After the trial, the Wagoner County Court did not grant Betty Cash's request for Support Alimony. The Court only awarded Betty Cash the Property Division as set forth in the Decree.

12. The Wagoner County Judge determined the award of Property Division. The Property Division was not awarded to Betty Cash pursuant to any settlement agreement between the Debtor and Betty Cash.

13. After the Wagoner County Court entered the Decree, Betty Cash appealed the Wagoner County Court's decision not to award her separate Support Alimony, which the Debtor again contested.

14. As a result of the appeal, the Oklahoma Court of Civil Appeals ordered the Debtor to pay Betty Cash Support Alimony in the amount of $800.00 per month beginning on the 1st day of October, 1997, and continuing in the like amount for eighty-four (84) months until paid.

15. The Debtor's obligation to pay Betty Cash the Support Alimony was in addition to his obligation to pay Betty Cash the Property Division.

16. On November 22, 1999, the Wagoner County Court entered an Order wherein the Debtor's separate obligation to pay Betty Cash the Support Alimony was reduced to judgment (the "Support Alimony Order").

17. As of October 31, 1999, the Debtor owed Betty Cash $20,354.80 in Support

Alimony. Pursuant to the Support Alimony Order, the Debtor was required to pay Betty Cash $10,000.00 of this amount immediately, and pay Betty Cash the remaining balance for Support Alimony in monthly installments until paid in full.

18. The Debtor completely satisfied his obligation to pay Betty Cash the Support Alimony. The Debtor paid the initial $10,000.00 amount to Betty Cash after the Court entered the Support Alimony Order, and made each of the required monthly payments until the Support Alimony was completely satisfied.

19. Beginning on October 1, 1997, the Debtor caused BAPH to make regular monthly payments to or for the benefit of Betty Cash in the amount of $3,505.95 for Property Division. The Debtor timely made these monthly payments until April, 2004. The Debtor has made over $260,000.00 in Property Division payments to Betty Cash as required under the Decree, in addition to the Support Alimony payments that the Debtor made pursuant to the Support Alimony Order.

20. As of April, 2004, the Debtor owed Betty Cash approximately $168,285.60 in Property Division payments, which is reflected in Schedule F of the Debtor's Bankruptcy Schedules. Betty Cash is a creditor of the Debtor's bankruptcy estate in this amount.

21. The Debtor caused BAPH to make monthly payments to Jana Rae Slayton pursuant to a separate obligation between Ms. Slayton, the Debtor, and BAPH.

According to the Agreed Pre-Trial Order, the Plaintiff seeks relief under 11 U.S.C. § 523(a)(4) and § 727(a)(2)(A). At the end of trial, Counsel for Plaintiff advised the Court that he did not believe there

was sufficient evidence to support the § 523(a)(4) claim and this claim was specifically abandoned. Therefore, the Court will consider the evidence presented in the context of Plaintiff's § 727(a)(2)(A) claim.

At trial Debtor testified as to the circumstances surrounding the filing of his bankruptcy, and the reasons for closing down the business. Debtor stated that his plumbing business was slowing down and he was experiencing health problems. Debtor has three young children, and he testified at trial that his wish to spend more time with his family was a factor in winding down BAPH. Debtor's sole income prior to closing down the business was from BAPH. While the Debtor used the BAPH account to pay the property division sums to Plaintiff, he used his personal account to pay the support alimony payments.

As to the sale of certain assets of the plumbing business to C-It-All, both Debtor and Michelle Cash testified that all items were sold at fair market value. The evidence supports this testimony, and Plaintiff did not produce any evidence to the contrary. The Plaintiff takes issue with the total sale price of the assets, which amounts to approximately $ 200,000.00. Plaintiff argues that the total value of BAPH was approximately $ 800,000.00, and asserts that Debtor failed to account for the goodwill of the company when it sold the assets of BAPH. Plaintiff bases her proposed value of BAPH on an appraisal prepared by her accountant during the divorce proceedings and on a financial statement prepared by the Debtor in 2002 in which the Debtor lists the value of BAPH at $ 800,000.00. The accountant testified at trial that in 1999 she valued the hard assets of BAPH at $ 378,000.00. The accountant did state that continual losses and a downturn in business would negatively affect the goodwill of a business.

Debtor testified that he never considered selling BAPH as a going concern to a third party. Debtor stated his father's plumbing business was sold to a third party and that the business had been "run into the ground." Debtor stated this initially had an adverse affect on his business, and was a factor in his decision

Case 04-07130    Doc 83    Filed 05/19/06    Entered 05/19/06 09:31:14    Desc Main
Document      Page 6 of 11

to sell the individual assets instead of the business as a whole. Debtor also stated that the financial statement in which BAPH was valued at $ 800,000.00 was prepared by the bookkeeper of BAPH, and that the value was taken from the accountant's appraisal. Debtor did not believe that the business was worth $ 800,000.00.

The accountant also stated at trial that during her valuation of BAPH in 1996 she found records of personal expenses that had been paid by BAPH. This Court heard the testimony of Ms. Elizabeth Collins, the bookkeeper for BAPH from 1975 to 2003. Ms. Collins testified that she was responsible for reimbursing the employees of BAPH, including the Debtor. Ms. Collins stated that when receipts were turned in, while they may have included personal expenses, only the business expenses were reimbursed. Ms. Collins further stated that she could not recall any personal expenses being reimbursed since 1997.

Plaintiff presented evidence regarding the tax consequences of the property division payments she received from BAPH. BAPH reported the property division payments in a manner that caused tax liability to the Plaintiff, when there should have been no tax liability. Plaintiff's accountant stated that the tax liability for 2000 is still under protest. Debtor's counsel stated at trial that the tax forms were corrected more than a year ago, and that it was assumed the matter was resolved.

The Plaintiff seeks denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A). In order to prevail on an action pursuant to § 727(a)(2)(A), the Plaintiff must show by a preponderance of the evidence "(1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1293 (10th Cir. 1997); *Holaday v. Seay (In re Seay),* 215 B.R. 780, 788-89 (10th Cir. BAP 1997).

7

The pivotal issue in this case is whether the property transferred by BAPH was property of the estate. Debtor argues that the property transfers at issue involve assets of BAPH, a non-debtor entity, and that Debtor's transfer of corporate assets did not constitute a transfer of his own property. Therefore, Debtor argues, Plaintiff's claim under § 727(a)(2)(A) should fail.

Debtor cites to the case *McCorp Management Solutions, Inc. v. C.A. Thurman (In re Thurman),* 901 F.2d 839 (10th Cir. 1990) in support of his argument. In *Thurman*, the debtor had secured a note payable to McCorp with a pledge of 500 shares of a corporation in which debtor held a 50% interest. After debtor defaulted on the note McCorp obtained a state court judgment. Before the judgment was final, however, the corporation in which the debtor held an interest transferred all of its assets to a subsidiary corporation. *Thurman*, 901 F.2d at 840.

McCorp objected to debtor's discharge pursuant to § 727(a)(2)(A). The Tenth Circuit Court of Appeals affirmed the conclusions of the district court and bankruptcy court, both of which ruled against McCorp. The Tenth Circuit Court of Appeals noted that the words "'Property of the debtor,' are not the same as 'property in which the debtor has a derivative interest.'" *Id.* at 841. The court further stated "Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest." *Id.* While the court agreed with both the bankruptcy and district courts that the actions of the debtor and his business associates were ethically questionable, it was unable to conclude that the debtor's actions justified a denial of his discharge. *Id.* at 842.

Plaintiff asserts that *Thurman* differs from the present case in that the debtor in *Thurman* could not transfer corporate assets on his own authority, the subject stock was only a minority of the total outstanding stock in the corporation and the debtor could not transfer corporate assets for his own

8

purposes. In the present case, Plaintiff argues, Debtor could transfer corporate assets on his own authority and for his own purposes without the necessity of action by any other person.

Plaintiff argues that the corporate identity of BAPH should be disregarded in determining what is property of the estate. Plaintiff contends that certain factors support piercing the corporate veil in this case, including: (1) Debtor signed checks issued by his corporation to pay all of his alimony payments to Plaintiff; (2) Debtor caused the corporation to report the alimony payments to the IRS in such a manner that the IRS has issued an assessment against Plaintiff for unpaid taxes, penalties and interest; (3) Debtor sold all of the assets of the plumbing company awarded him under the Divorce Decree to the new company owned by his present wife for almost $600,000 less than Debtor valued the company in March, 2002; (4) Debtor received the sale proceeds in the form of salary; and (5) Debtor continues to retain the economic benefit of the property transferred. Plaintiff asserts that the circumstances present in this case warrant a denial of Debtor's discharge under § 727(a)(2)(A).

Generally, a corporation is a separate entity apart from the persons representing it, however there are restrictions. "Both law and equity disregard the distinct existence and treat them as identical when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice." *King v. Modern Music Co.,* 33 P.3d 947, 952 (Okla. Civ. App. 2001); *See also Mid-Continent Life Ins. Co. v. Goforth,* 143 P.2d 143 (Okla. 1943). Plaintiff must show either "(1) that the separate corporate existence is a design or scheme to perpetrate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation." *King,* 33 P.3d at 952.

Oklahoma permits the court to disregard the corporate entity if used, (1) to defeat public

9

> convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime.... If the legal entity is used to accomplish these purposes, the law may treat the corporation as an association of persons. The goal in piercing the corporate veil is to impute liability for the acts of the corporation to the responsible persons.

*Id.* (citing *In re Estate of Rahill,* 827 P.2d 896, 897 (Okla. Civ. App. 1991)). The corporate veil may also be pierced in the interest of justice, or where the corporation is used to defeat an overriding public policy. *King,* 33 P.3d at 952.

In the present case, this Court is unable to justify piercing the corporate veil based on the evidence presented at trial. There was no evidence indicating that Debtor's personal expenses have been paid by BAPH since 1997 with the exception of the property division payments to Plaintiff. The tax issues related to the property division payments do not support piercing the corporate veil. Further, the evidence shows that Debtor sold certain assets of the business during a two year period to C-It-All and other third parties for fair market value. There was no judgment lien put on the stock of the corporation or the corporation assets by the divorce court in awarding the Plaintiff the property division judgment. Debtor therefore was not precluded by any court order or judgment from liquidating the corporate assets. During this two year period Debtor continued to make the property division payments. There is insufficient evidence of a scheme to perpetrate fraud against the Plaintiff. As a result, the corporate entity of BAPH should not be disregarded.

Having found there to be insufficient evidence to support piercing the corporate veil, this Court must deny Plaintiff's claim under § 727(a)(2)(A). The transfer of assets of BAPH did not constitute the transfer of property of the estate, a required element under § 727(a)(2)(A). As a result, the Debtor is entitled to a discharge.

IT IS THEREFORE ORDERED that the Debtor's discharge, pursuant to § 727, will not be denied.

### 

Case 04-07130    Doc 83    Filed 05/19/06    Entered 05/19/06 09:31:14    Desc Main
Document      Page 11 of 11